[Civ. No. 5116. First Appellate District, Division One.—July 15, 1925.]

CHAS. G. WILLEY, as Executor, etc., Appellant, v. ALASKA PACKERS ASSOCIATION, Respondent.

[1] CONTRACTS—EMPLOYER AND EMPLOYEE—ALLEGED FAILURE OF EMPLOYER TO PROVIDE MEDICAL NECESSITIES—REQUEST FOR MEDICINE—EVIDENCE—VERDICT.—In an action by an employee to recover damages for the alleged failure of his employer to provide the former with medical and surgical necessities according to the terms of a contract, through which default it is claimed the employee con-

tracted tuberculosis, there being a conflict in the evidence upon the subject as to whether or not plaintiff had ever requested medicine or whether he advised anyone of his condition, this question is concluded by the verdict in favor of the defendant.

[2] ID.—HEALTH OF EMPLOYEES—DUTY OF EMPLOYER—DEMAND.—Under its contract whereby it agreed to provide medical and surgical necessities, the defendant was not bound to affirmatively make an investigation of the health of its employees in the absence of a demand so to do.

[3] ID.—INVESTIGATION BY EMPLOYER.—In such action, where plaintiff himself did not consider himself sick, and made no complaint nor asked for aid or assistance, the defendant was not bound to acquaint itself at its peril of plaintiff's latent ailment, as the law imposes no such duty upon an employer; and it would be an unreasonable construction of the contract to hold that defendant was, by reason thereof, under a legal contractual obligation to examine, from time to time, every one of its employees, which the evidence showed to be numerous, to ascertain if they might be suffering from some secret affliction.

[4] ID.—SICKNESS FROM EMPLOYEE'S OWN NEGLIGENCE—INSTRUCTIONS. In such action, an instruction that if the jury believed from the evidence that plaintiff contracted tuberculosis by reason of his own gross negligence and failure to exercise proper care for his own health he was not entitled to recover, was proper.

[5] ID.—SICKNESS OF SEAMAN—NEGLIGENCE—LIABILITY OF SHIP OWNER. A ship owner is not liable for damages on account of the sickness of a seaman where his gross negligence was a contributory cause of his sickness.

[6] ID.—MANNER OF CONTRACTING DISEASE—QUESTION OF FACT.—In such action, the question as to whether or not plaintiff had contracted the disease complained of through failure to make his condition known was one of fact for the jury.

[7] ID.—PRIOR CONDITION OF EMPLOYEE—EVIDENCE.—In such action, the trial court did not err in admitting evidence showing that plaintiff was suffering from a cough prior to his last employment by defendant, where plaintiff's wife had testified that up to that time plaintiff never had a cough and his physical condition had been good during their marriage relation, a period of some ten years.

[8] ID.—VERDICT—MISCONDUCT.—In such action, the act of the jury in filing with the trial court a letter addressed to the defendant cor-

2. Master's duty to servant who is stricken or falls sick, notes, 4 L. R. A. (N. S.) 49; 12 A. L. R. 909. See, also, 16 Cal. Jur. 966; 18 R. C. L. 506.

poration requesting it to assist plaintiff's family, in no manner affected the verdict, which embodied the conclusion of the jury on questions of fact litigated upon the trial.

(1) 4 C. J., p. 858, n. 3. (2) 39 C. J., p. 243, n. 4. (3) 39 C. J., p. 243, n. 4. (4) 39 C. J., p. 244, n. 14 New. (5) 35 Cyc., p. 1201, n. 20. (6) 39 C. J., p. 244, n. 14 New. (7) 39 C. J., p. 244, n. 14 New. (8) 38 Cyc., p. 1823, n. 19 New.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial. E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. W. Hutton for Appellant.

Chickering & Gregory and Donald M. Gregory for Respondent.

TYLER, P. J.—Action to recover the sum of fifty thousand dollars as damages for the alleged failure of defendant to provide plaintiff with medical and surgical necessities according to the terms of a contract, through which default it is claimed plaintiff contracted tuberculosis.

The complaint alleges that the breach of contract occurred under the following circumstances: On or about April 3, 1922, plaintiff was hired and employed by defendant corporation to serve in the capacity of mate of a certain vessel owned by it and known as the "Star of Finland." The vessel was on a voyage from San Francisco to a salmon cannery located at a place called Alitak, on Kodiak Island, in the territory of Alaska. Under the terms of employment plaintiff, while in Alaska, was to work as master on a launch called the "Goney."

The shipping articles, among other things, contained a provision that all parties of the second part, of whom plaintiff was one, should "receive medical and surgical attendance and medical and surgical necessities" while engaged under the contract. The complaint charges that, while working on the "Goney" at Alitak, plaintiff was compelled to leave the last-named place at 4 o'clock in the morning and make a fifty-mile trip each day, and that defendant did not provide

plaintiff at such times with proper food, as the contract of employment required; that he usually returned from these trips at about 7 o'clock in the evening, after meal times, and, generally, he had nothing to eat or drink but coffee and bread, which was not proper food for the work he had to perform, and in consequence of which his system ran down and his vitality became of a very low ebb, which prevented him from resisting any sickness that he contracted or might contract; that on or about the fourteenth day of August, 1922, while working on the "Goney" under these conditions and with an impaired vitality, he contracted a severe cold, which he was unable to throw off; that he applied to the superintendent and agent of defendant at Alitak for medicine, but was refused the same, although he was in need thereof; that about two weeks thereafter the superintendent did furnish the same to him, but in an insufficient quantity, at which time his cold was worse, and by reason of this lack of medicine and medical attention the cold settled on his lungs and developed into tuberculosis, which, it is averred has become permanent; that upon his return to San Francisco plaintiff went under the care of a physician, and was, at the time of the filing of the complaint, in a hospital.

The answer admits the employment but denies any failure on the part of defendant corporation to provide plaintiff with proper food, and denies that he was compelled to work at unreasonable hours, or that defendant ever refused to furnish him with proper medical or medicinal attention.

Trial was had before a jury, which resulted in a verdict in favor of the defendant corporation. A motion for a new trial was made and denied, and this is an appeal from the judgment and order.

Since the rendition of the judgment Kleppe has died and his executor, Charles G. Wiley, has been substituted as plaintiff.

As ground for reversal it is first urged that the verdict is against the evidence, as it shows that defendant corporation breached its contract in failing to furnish plaintiff with the proper medical attendance and treatment that its contract and the maritime law demanded.

[1] The record discloses that plaintiff entered into the employment with defendant corporation as alleged in his complaint. That upon arriving at Alitak station he took

charge of the "Goney" as master and proceeded to perform his duties. He testified that he contracted a cold and applied to the superintendent for some medicine to relieve it, but the same was not furnished him for some two weeks thereafter. He further testified, in substance, that he was compelled to work at unusual hours without proper food and under conditions that aggravated his complaint, in consequence of which he developed tuberculosis. He admitted that he made no request to be sent to a hospital, as he did not think he was sick enough to be there. Defendant introduced evidence to disprove that plaintiff was obliged to work at unreasonable hours or that he was not furnished with sufficient or proper food. In this connection other evidence was introduced to show that the "Goney," of which plaintiff was master, was used by the corporation to bring fish from fish-traps located about twenty-five miles from the cannery; that on the route to these traps there was located a station about fourteen miles from the cannery, where the corporation maintained a kitchen under the supervision of a cook, where food could be procured at all times, and that plaintiff had on occasions availed himself of this opportunity and had never complained of the food furnished. It also appeared that the "Goney" was supplied with provisions. The log-book, kept in the handwriting of plaintiff, showed that except upon two occasions plaintiff had not been compelled to work at unusual hours; that he generally left the cannery about 6 A. M., and returned between 2 and 3 o'clock in the afternoon. It also appears that defendant operates, in connection with its business in Alaska, some eight medical stations and five hospitals, comfortably fitted with modern appliances and plentifully supplied with drugs and surgical instruments, and that it employs eight physicians, besides nurses and orderlies. There was other testimony to show that there was at all times a medicine-chest at Alitak, but that plaintiff never asked for medicine or in any manner attempted to avail himself of these advantages. The physician whose duty it was to visit the cannery at Alitak denied that plaintiff had ever applied to him for medicine or advice and that he never refused medicine to any employee who asked for it. The testimony of the superintendent was to the same effect. There being a conflict in the evidence upon the subject as to whether or not plaintiff had ever requested

medicine or whether he advised anyone of his condition, this question is concluded by the verdict.

The case, therefore, so far as this court is concerned, presents the question as to whether or not defendant corporation was liable in damages for failure to furnish plaintiff with medical treatment in the absence of a request so to do and where there was nothing to bring to the knowledge of the corporation that such service was required, for apart from his own testimony that he requested aid there is no evidence that any knowledge of his condition was brought home to the officials or agents of the corporation. [2] In other words, was the corporation, under its contract, bound to affirmatively make an investigation of the health of its employees in absence of a demand so to do? We do not think that any such duty rested upon it. If the ailment or injury suffered was of such a character as to be perfectly apparent that aid was required to relieve it, there can be no question but that it would be the duty of the coporation to furnish aid even though it was not asked for. (*The Iroquois,* 194 U. S. 240–246 [48 L. Ed. 955, 24 Sup. Ct. Rep. 640, see, also, Rose's U. S. Notes].) [3] But where, as here, plaintiff himself did not consider himself sick, and made no complaint nor asked for aid or assistance, the corporation was not bound to acquaint itself at its peril of plaintiff's latent ailment. The law imposes no such duty upon an employer, and it would be an unreasonable construction of the contract to hold that defendant corporation was, by reason thereof, under a legal contractual obligation to examine from time to time, every one of its employees which the evidence shows to be numerous, to ascertain if they might be suffering from some secret affliction. To so hold would be to declare an employer, under such circumstances, an insurer of the health of his employees. Such is not the law.

Complaint is made of many of the instructions to the jury. The trial court was of the opinion that defendant was under no obligation to furnish plaintiff with medical attention unless it was asked for by him, in the absence of information sufficient to put it upon inquiry, and so instructed the jury.

Most of the instructions complained of have to do with this question, and upon examination we see no errors in

any of them.  [4]  The jury was further instructed that if it believed from the evidence that plaintiff contracted tuberculosis by reason of his own gross negligence and failure to exercise proper care for his own health he was not entitled to recover.

The instruction was a proper one.  [5]  A ship owner is not liable for damages on account of the sickness of a seaman where his gross negligence was a contributory cause of his sickness.  [6]  The question as to whether or not plaintiff had contracted the disease complained of through failure to make his condition known was one of fact for the jury. (5 Labatt's Master & Serv., sec. 2008.)

[7]  It is next claimed that the court erred in admitting evidence showing that plaintiff was suffering from a cough prior to his employment by defendant.  It appeared in evidence that plaintiff had been employed by defendant in the same capacity and at the same place for three years prior to 1922.  His wife testified that up to the date last mentioned plaintiff never had a cough and his physical condition had been good during their marriage relation, a period of some ten years.  To disprove this testimony defendant produced fellow-employees of plaintiff, who testified that they had known him prior to 1922, and that he always had a cough.  Under these circumstances the admission of this evidence was proper.

[8]  And finally, plaintiff complains of misconduct of the jury.  The claimed misconduct consisted in the jury filing with the trial court a letter addressed to the defendant corporation requesting it to assist plaintiff's family.  This act in no manner affected the verdict, which embodied the conclusion of the jury on questions of fact litigated upon the trial.  That the members of the jury, moved undoubtedly by compassion, made such request in no manner qualified or affected their verdict.

The judgment and order are affirmed.

Cashin, J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 10, 1925.